## NICHOLS VS. HALLIDAY.

(1.) *Construction of statutes.* (2.) *Lien of boarding-house keeper on effects of boarder, under ch. 89, Laws of 1863.*

1. It is a fundamental rule in the construction of statutes, so to interpret their language, if possible, as to give them some force and effect; and where the construction is elliptical, the words which are obviously necessary to complete the sense will be supplied.
2. Under ch. 89, Laws of 1863, the keeper of a boarding-house has a lien upon the baggage and effects of a boarder for the amount due for his board, of the same character and extent as that which an *inn-keeper* has at the common law upon the goods of his guests who are *travelers and wayfaring persons.*

APPEAL from the Circuit Court for *Kenosha* County.

Replevin for certain wearing apparel, umbrellas, valises, etc.

The substance of the answer is stated in the opinion. A demurrer to the answer, as not stating a cause of action, was sustained, and the defendant appealed.

*Webster & Lovell,* for appellant.

*A. G. Cole,* for respondent, contended that the statute (sec. 1, ch. 89, Laws of 1863) is plain and unambiguous, and leaves no room for construction (Sedgw. on Stat. and Con. Law, 231; *Fisher v. Bright,* 2 Cranch, 258; *Ogden v. Glidden,* 9 Wis. 46); that a statute in favor of *particular persons,* in derogation of common right, should be strictly construed, and should not be extended beyond its express words or clear import (4 Mass. 145, 473; 3 Duer, 183; 2

Hill, 77; Vaughan, 179); that this act gives the keeper of a boarding-house only such a lien as an inn-keeper has upon the baggage and effects *of his boarder;* and that an inn-keeper has no lien in such a case. Edwards on Bailm. 402; Story on Bailm. 311, 312; 2 Parsons on Con. (5th ed.) 150; 5 Term, 273; 14 Johns. 175; 7 Cow. 497; 3 Hill, 485, etc., etc.

COLE, J. We think the answer shows a good justification for the detention of the property. It states, in substance, that the defendant was the keeper of a boarding-house, and that he held and detained the property, being the goods and effects of the plaintiff, for the amount which the latter owed him for his board.

Section 1, chap. 89, Laws of 1863, provides that "the keeper of a boarding-house shall have the same lien upon and right to detain the baggage and effects of any boarder for the amount which may be due for board by such boarder, to the same extent and in the same manner as inn-keepers have such lien and such right of detention." It must be conceded that this provision is not very happily expressed; but there would not seem to be any difficulty in arriving at its meaning, and the intention of the legislature in enacting it. The manifest object of the statute is to give to boarding-house keepers a lien upon the baggage and effects of a boarder, for the amount due from such boarder for board, of the same character and extent which an inn-keeper has at common law upon the goods of his guests for board and lodging supplied by him.

It is familiar doctrine that public policy imposes upon inn-keepers a severe liability, and consequently the law gives them some peculiar rights and privileges; the most important of which is, that the inn-keeper has a lien upon the goods brought to him by a guest, for the price of his entertainment. This statute

obviously intended to invest a boarding-house keeper with a like lien upon the effects of a boarder for the amount due for board.

It is claimed, however, that the meaning of this law is to confer upon the keeper of a boarding-house the same lien upon the effects of his boarder for the amount due for board that an inn-keeper has upon the effects of his boarder for his charges. But this construction deprives the statute of all force and meaning. The law did not give an inn-keeper a lien upon the goods of a boarder for the price of his board. Story on Bailments, § 477; 2 Parsons on Con. (5th ed.) p. 151; *Ewart v. Stark*, 8 Rich. (Law) 423; *Manning v. Wells*, 9 Humph. 746; *Hursh v. Byers*, 29 Mo. 469. He only had a lien upon the goods of his guest, who was a traveler and wayfaring person. Story on Bailments, §§ 475, 476 and 477. So that this interpretation deprives the law of all meaning, and renders it ineffectual for any purpose whatever. Such a consequence is to be avoided, if possible; and we must construe the language used by the legislature so as to give it some meaning, rather than put upon it a sense which will make it produce no effect, and in reality deprive the law of all life and force. This is a cardinal rule in the interpretation of statutes. But we think the manifest object of the law was to give the keeper of a boarding-house the same lien upon the effects of his boarder for his charges, which an inn-keeper has at common law upon the goods of his guest for the price of his board and lodging.

It follows from these views, that the order of the circuit court sustaining the demurrer to the answer must be reversed, and the cause remanded for further proceedings.

DIXON, C J. The language of the statute is elliptical, and the words omitted and obviously intended to be supplied at the end of the section, are, "with

respect to the baggage and effects of their guests." The supplying of these words is plainly suggested by the context, and the case falls clearly within the fifteenth and sixteenth maxims of Vattel, for the interpretation of treaties and statutes.

" Every interpretation that leads to an absurdity, ought to be rejected."

" The interpretation which renders a treaty (or statute) null and void cannot be admitted; it is an absurdity to suppose that after it is reduced to terms, it means nothing. It ought to be interpreted in such manner as that it may have effect, and not be found vain and illusive." Potter's Dwarris, 128.

And the following rule of Domat applies with equal force: " If in any law we find the omission of something essential to it, or which is a necessary result of its provisions, and requisite to give the law its full effect, we may supply what is wanting but not expressed, and extend the law to what it was manifestly intended to embrace, but in its terms does not include." Ib. 140, 141.

I fully agree, therefore, that the construction given by the court below was erroneous, and that the order must be reversed.

*By the Court.*—Order reversed.

Lyon, J., took no part in this decision.